JL

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David E. Griswold, | No. CV 19-04562-PHX-DGC (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff David E. Griswold, who is confined in the Arizona State Prison Complex (ASPC)-Lewis, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). The Court will join Centurion Health LLC and Acting Director Joseph Profiri in his official capacity as Defendants for the sole purpose of answering Plaintiff's claims for injunctive relief, order Defendants Corizon, Centurion Health, and Profiri to answer the Complaint, and dismiss the remaining Defendants without prejudice.

**I.      Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $21.62. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.

28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III. Complaint

In his two-count Complaint, Plaintiff sues Corizon Health Care Inc. ("Corizon"),[1] former Director of the Arizona Department of Corrections (ADC) Charles L. Ryan,[2] Interim Divisional Director of Health Services Richard Pratt, Regional Medical Director Ayodeji Ladele, and Nurse Practitioners (NP) Curtis Bass, Lawrence E. Ende, and Marie DeMello. Plaintiff asserts claims of inadequate medical care and seeks declaratory, injunctive, and monetary relief.

In **Count One**, Plaintiff alleges the following: On August 25, 2011, while housed at ASPC-Tucson Whetstone Unit, Plaintiff was assaulted with a "lock in a sock" and was stomped on and "choked out." Plaintiff suffered "tremendous" cuts and abrasions on his head and neck and was taken to the hospital. Plaintiff was treated with stitches for the cuts and returned to the prison the following day. Approximately one month later, Plaintiff began to experience neck and spine pain. He complained to ADC Medical of his ongoing pain. By September 30, 2011, the neck and spine pain became unbearable, and Plaintiff lost mobility in his right arm and hand. Plaintiff's pain level was an "acute level 10," and the prison "medical team" administered pain medications to Plaintiff. Plaintiff took different pain medications for nearly two years before he was released from prison on April 4, 2013.

On April 5, 2013, Plaintiff went to a hospital, had x-rays taken, and was examined by a doctor, who diagnosed Plaintiff with a broken neck. The doctor explained that Plaintiff would be permanently disabled if he did not have immediate surgery to fuse his spine and neck together. Plaintiff had the fusion surgery, but because of the nearly two-

---

[1] From March 4, 2013 through July 1, 2019, Corizon was the contracted healthcare provider for Arizona Department of Corrections prisoners. The current contracted healthcare provider is Centurion Health, LLC.

[2] On September 13, 2019, Charles Ryan stepped down as ADC Director. The Acting Director is Joseph Profiri.

year delay, Plaintiff now has pain control issues and must take pain medications "permanently."

Plaintiff was arrested on new charges on September 22, 2015 and was held in a Maricopa County Jail to await trial. The jail medical service "recognized" Plaintiff's pain and suffering by taking x-rays, reaching a professional diagnosis, and administering needed pain medications. At the time, Plaintiff was taking gabapentin and baclofen to relieve the nerve damage in his neck and spine.

Plaintiff was in Maricopa County custody for two years and was ultimately convicted and sentenced to a 9-year prison term in ADC. In September 2017, Plaintiff was placed in ASPC-Lewis Buckley Unit. Plaintiff saw a Corizon healthcare provider, who "did not believe" that Plaintiff had a neck or spine injury or nerve damage and refused to treat him. Plaintiff had his medical records sent to Buckley Unit medical on October 3, 2017, but he was denied pain medication and was instead placed on an Alternative Treatment Plan (ATP).

In January 2018, Plaintiff was moved to Barchey Unit. Plaintiff submitted a Health Needs Request (HNR) and saw Defendant Bass. Plaintiff explained that his neck and spine had been fused, and he had sustained nerve damage and had "serious level 10 pain" with movement. Plaintiff told Bass he needed to see a pain control specialist and be prescribed pain medication that worked, because the ibuprofen he had been taking did not relieve the pain. ADC and Corizon policy only permitted Bass to make referrals to Corizon's Utilization Management (UM) unit, which approved referrals to specialists and pain medication prescriptions. Bass "made referrals" to Defendant Ladele for Plaintiff to see a specialist and be given pain medication, but the referral was denied, and Plaintiff received no medical care for his pain. Instead, Plaintiff was placed on an ATP, which, according to Plaintiff, "can only be deemed no treatment."

In May 2018, Plaintiff submitted another HNR and saw Defendant Ende. After "diagnosing" Plaintiff, Ende submitted a referral to Defendant Ladele, requesting that Plaintiff be referred to a specialist and receive "recommended" pain medication. All

referrals were denied, and Plaintiff was kept on an ATP. Plaintiff "sat in pain" for another five months, and in October 2018 he submitted another HNR for pain control. Defendant DeMello submitted referrals to Ladele, requesting that Plaintiff be seen by a specialist to "determine his pain" and to receive pain medication. The referral was denied, and Plaintiff was kept on an ATP.

Plaintiff suffers multiple fused vertebrae in his upper neck and back, which causes nerve damage, or neuropathy, from his neck down his right arm to his hands and fingers. He feels "level 10 pain" in those areas and numbness in his arm and hand. Plaintiff also has muscle spasms, and at times his hand "lock[s] up" and shakes uncontrollably. Plaintiff suffers tinnitus in both ears and migraine headaches. He has spoken with mental health staff about having suicidal thoughts because he cannot stop the pain, and no one will help him.

Plaintiff alleges that Defendant Ryan, as ADC Director, "promised" Plaintiff through written policies and practices to allocate sufficient resources to allow Plaintiff to receive the "community standard of health care." Plaintiff contends that ADC has fallen far below the federally-mandated measure set forth in Department Order (DO) 110.01, and Ryan's policy is "more honored in the breach th[a]n in observance." Plaintiff claims this has left him at the mercy of a "de-facto" policy that caused and still causes Plaintiff serious pain and suffering. Plaintiff asserts that, despite the stipulation in *Parsons v. Ryan*, CV-12-00601-PHX-ROS,[3] Ryan failed to "discuss" performance measures concerning adequate staffing and the "unlawful[]"method of permitting UM to make treatment decisions with Defendant Corizon until November 2017. Plaintiff alleges that UM denies referrals for medical procedures and offsite specialist visits to save money, which Plaintiff claims "had been addressed formally" in the stipulation in *Parsons* and testimony by "whistleblower" Corizon staff. Plaintiff asserts that Ryan was fined and held in contempt for failing to comply with the stipulation.

---

[3] *Parsons* is a 2012 class action filed on behalf of ADC prisoners concerning the provision of medical care and conditions of confinement in isolation units.

Plaintiff contends that instead of "push[ing]" Corizon to meet the constitutionally-mandated level of health care for Plaintiff and other ADC prisoners by "punishing" Corizon with monetary penalties, Ryan paid Corizon $2.5 million "as a reward" and told the Court in *Parsons* that it was a "good business decision." Plaintiff alleges that Ryan's "business decision" to contract with a private vendor to save money set into motion a series of events that resulted in Plaintiff being denied needed health care. Plaintiff asserts that Ryan knew or should have known contracting with a private vendor would cause a constitutional violation, because Corizon staff are still denying him health care, and Corizon is still denying referrals for Plaintiff to see a specialist and receive pain medication. Plaintiff claims this is being done to save money. Plaintiff contends that Ryan's "indirect participation" makes him liable for deliberate indifference to Plaintiff's serious medical needs, which has caused Plaintiff unnecessary and wanton pain and suffering.

Plaintiff alleges that Defendant Pratt was deliberately indifferent by "monitoring through policy and practice" and "allowing" Corizon to fail to provide Plaintiff with adequate health care. Plaintiff asserts that Pratt was also deliberately indifferent to systemic failure to fix the issues, such as Corizon's inadequate staffing at ASPC-Lewis and UM's practice of denying needed specialist visits and pain medication to save money. Plaintiff contends that Pratt has "set forth a series of inaction," in that Pratt knew or should have known, due to being "formally" alerted to the violations through Court findings and testimony by Corizon whistleblowers, that Corizon's provision of health care would and has caused violation of Plaintiff's rights.

Plaintiff alleges that Defendant Corizon was deliberately indifferent when UM denied Defendants Bass, Ende, and DeMello's requests for referrals to a specialist and pain medication to save money. Plaintiff claims the "Alternative Treatment Plan" amounts to "no treatment at all," which caused Plaintiff to suffer unnecessary and wanton pain.

Plaintiff alleges that Defendants Bass, Ende, and DeMello were deliberately indifferent when they "conceded to" UM and Defendant Ladele's denial of the referrals they had requested. Plaintiff asserts Ladele was deliberately indifferent "by" ADC and

Corizon's policy and practice of denying referrals to specialists and pain medications to save costs.

In **Count Two**, Plaintiff alleges the following: Plaintiff has had hepatitis C (HCV) for many years. In December 2018, Plaintiff saw Defendant DeMello, who informed Plaintiff that his APRI score was 2.1. On May 9, 2019, Plaintiff saw Defendant Ende. Ende told Plaintiff his APRI score had increased to 2.285, but rather than refer Plaintiff for HCV treatment, Ende placed Plaintiff on an ATP, which consisted of "bottles of some type of syrup" to remove ammonia from his blood. Corizon follows ADC's Health Services Technical Manual and Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis C. The ADC policy provides that prisoners with an APRI score of more than 2.0 qualify for the highest priority level for hepatitis C treatment.

Plaintiff suffers progressive HCV infection that causes abdominal pain, liver swelling, and lethargy. If the HCV is not immediately treated, Plaintiff may endure total liver failure, cirrhosis, cancer, fibrosis, or early death. Plaintiff also suffers mental disorders that are documented with the prison psychologist, including past suicidal thoughts because ADC and Corizon will not provide the medical care he needs, and he "just gets more ill every day."

Plaintiff alleges that Defendants DeMello and Ende were deliberately indifferent when they referred Plaintiff to receive HCV treatment, but when the referrals were denied, they "failed to file an appeal." Plaintiff claims this delay in treatment has caused him unnecessary and wanton pain and suffering. Plaintiff asserts that Defendant Ladele denied Plaintiff HCV treatment for financial reasons. Plaintiff contends that Corizon's policy and practice permitted Ladele, a "non-specialist" in HCV treatment, to deny approval for HCV treatment in favor of an ATP to save costs.

Plaintiff contends that although he "meets all requirements" for HCV treatment, he has been denied treatment, which "clearly" shows that Corizon is trying to save money at the expense of Plaintiff's health and well-being. Plaintiff asserts that Defendant Ryan is liable as a "third party" because Ryan has knowingly permitted Corizon to only fulfill a

reasonable standard of health care dependent on "cost-contained" policy and practice. Plaintiff also alleges that Defendant Pratt knowingly allowed Corizon to deny Plaintiff HCV treatment and to provide only a "reasonable" standard of health care.

### IV. Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

#### A. Official Capacity versus Individual Capacity

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the defendant named in his official capacity, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).

##### 1. Monetary Damages Against ADC Officials in Their Official Capacities

Plaintiff may not obtain money damages from ADC officials in their official capacities. *See Hafer v. Melo,* 502 U.S. 21, 27 (1991) ("State officials sued for damages

in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991). Therefore, the Court will dismiss Plaintiff's claims for money damages against Defendants Ryan and Pratt in their official capacities. However, a state official *can* be sued in his official capacity for prospective injunctive relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

### 2. Defendants Ryan and Pratt – Individual Capacity

Plaintiff does not allege any facts to support a conclusion that Defendants Ryan or Pratt were personally involved in or otherwise aware of Plaintiff's serious medical needs. Furthermore, Plaintiff does not allege any facts to support a conclusion that Ryan or Pratt participated in or directed violations by their subordinates or knew of their subordinates' violations and failed to act to prevent them. Rather, Plaintiff alleges only that the litigation in *Parsons* establishes that ADC and Corizon have a pattern, policy, or custom of denying prisoners healthcare and that the Court in *Parsons* held Ryan in contempt and fined him for not correcting the issues with healthcare. Plaintiff also asserts that because of *Parsons*, Ryan and Pratt knew or should have known that Corizon's provision of health care would result in the violation of Plaintiff's constitutional rights. These allegations do not support a conclusion that Ryan or Pratt were in any way personally involved in Plaintiff's medical treatment or aware of Plaintiff's serious medical needs. Therefore, Plaintiff has not stated an Eighth Amendment claim against Ryan or Pratt in their individual capacities. The Court will dismiss without prejudice Defendants Ryan and Pratt in their individual capacities.

### B. Medical Care

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### 1. Count One

In Count One, Plaintiff alleges only that Defendants Bass, Ende, and DeMello requested that Plaintiff be referred to a pain specialist and be given pain medication, but their referrals were denied. Plaintiff does not allege any facts to support a conclusion that Bass, Ende, and DeMello were personally involved in the denial of the referrals or that they

had any authority to disregard the denial of the referrals. Plaintiff's allegations do not support a conclusion that Defendants Bass, Ende, and DeMello were deliberately indifferent to his serious medical needs.

With respect to Defendant Ladele, Plaintiff alleges that Ladele denied the referral requests, but he fails to provide any factual detail regarding the referrals or the denials. Furthermore, Plaintiff does not explain how the "Alternative Treatment Plan" amounts to "no treatment" or how it otherwise constitutes deliberate indifference to his serious medical needs. Accordingly, Plaintiff has not alleged facts to support a conclusion that Ladele was deliberately indifferent to his serious medical needs.

### 2. Count Two

Plaintiff alleges in Count Two that Defendants Ende and DeMello requested that Plaintiff be treated for HCV, and when Defendant Ladele denied the requests, Ende and DeMello "failed to file an appeal." These allegations do not support a conclusion Ende or DeMello were personally involved in the denial of the referrals or that they had any authority to disregard the denial of the referrals.

Plaintiff alleges that Ladele, who is not an HCV-specialist, denied the requests for HCV treatment to save money. However, as in Count One, Plaintiff fails to provide any factual detail regarding the referrals or the denials. Likewise, Plaintiff does not describe the "Alternative Treatment Plan" that Ladele approved instead of HCV treatment or explain how Ladele's decision amounted to deliberate indifference to his serious medical needs. Accordingly, Plaintiff has failed to state a deliberate indifference claim against Ladele in Count Two.

Plaintiff has not stated a deliberate indifference claim against Defendants Bass, Ende, DeMello, and Ladele, and these Defendants will therefore be dismissed.

## V. Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Corizon for its policy, pattern, or practice of delaying

**TERMPSREF**

- 11 -

1  and denying health care to save costs. The Court will require Corizon to answer Plaintiff's
2  claims for monetary relief.

3  Plaintiff also seeks injunctive relief, but he has not stated a claim against any Defendant who could accord complete relief to Plaintiff. Thus, pursuant to Rules 19(a)(1) and 21 of the Federal Rules of Civil Procedure, the Court will join Acting Director Profiri in his official capacity and Centurion Health LLC for the sole purpose of answering Plaintiff's claims for injunctive relief in the Complaint. *See* Fed. R. Civ. P. 19(a)(1) (requiring joinder of a party if, in that person's absence, the Court cannot accord complete relief among existing parties); Fed. R. Civ. P. 21 (permitting the Court to add or drop a party at any time, on just terms").

## VI.   Request for Injunctive Relief

In his Request for Injunctive Relief (Doc. 6), Plaintiff asserts that he is still not receiving HCV treatment, which is causing him irreparable harm, and he fears he will suffer imminent death without treatment. Plaintiff asks the Court to expedite these proceedings or order immediate treatment to prevent any further liver damage and prevent the damage from entering the terminal stage (stage four).

To seek injunctive relief, a plaintiff must file a motion for a temporary restraining order or a preliminary injunction in accordance with Rule 65 of the Federal Rules of Civil Procedure. A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Where a movant seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in

damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).[4] "The 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014).

Unlike a preliminary injunction, *see* Fed. R. Civ. P. 65(a), a temporary restraining order (TRO) may be entered "without written or oral notice to the adverse party." Fed. R. Civ. P. 65(b). A TRO may issue, ex parte, if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before* the adverse party can be heard in opposition"; and (B) the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b) (emphasis added).

Plaintiff's Request for Injunctive Relief does not comply with Rule 65. Moreover, Plaintiff has not addressed any of the factors set forth in *Winter*, and he has not set forth any facts concerning his current condition, such as the results of recent lab tests or provider examinations, to support a conclusion that "extreme or very serious damage" will result if the Court does not grant immediate injunctive relief. Likewise, Plaintiff has not set forth specific facts that clearly show that he will suffer "immediate and irreparable injury, loss, or damage" if the Court does not issue a TRO without notice. The Court will therefore deny Plaintiff's Request for Injunctive Relief without prejudice.

**VII. Warnings**

    **A. Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or

---

[4] "A mandatory injunction orders a responsible party to take action," while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals*, 571 F.3d at 879 (internal quotation marks omitted).

(2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

/ / /

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $21.62.

(3) Plaintiff's Request for Injunctive Relief (Doc. 6) is **denied without prejudice**.

(4) Defendants Ryan, Pratt, Ladele, Bass, Ende, and DeMello are **dismissed** without prejudice.

(5) The Clerk of Court must update the docket to reflect that Centurion Health LLC and Acting Director Profiri in his official capacity are joined as Defendants for the sole purpose of answering Plaintiff's claims for injunctive relief in the Complaint.

(6) Defendants Corizon, Centurion Health, and Profiri must answer the Complaint.

(7) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Corizon, Centurion Health, and Profiri.

(8) Plaintiff must complete[5] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the

---

[5] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

1  action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv
2  16.2(b)(2)(B)(ii).

3  (10)  The United States Marshal must retain the Summons, a copy of the
4  Complaint, and a copy of this Order for future use.

5  (11)  The United States Marshal must notify Defendants of the commencement of
6  this action and request waiver of service of the summons pursuant to Rule 4(d) of the
7  Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this
8  Order.

9  (12)  A Defendant who agrees to waive service of the Summons and Complaint
10  must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within
11  30 days of the date of the notice and request for waiver of service** pursuant to Federal
12  Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

13  (13)  The Marshal must immediately file signed waivers of service of the
14  summons.  If a waiver of service of summons is returned as undeliverable or is not returned
15  by a Defendant within 30 days from the date the request for waiver was sent by the Marshal,
16  the Marshal must:

17  (a)  personally serve copies of the Summons, Complaint, and this Order
18  upon Defendant pursuant to Rule 4(e)(2) and Rule 4(h)(1) of the Federal Rules of
19  Civil Procedure; and

20  (b)  within 10 days after personal service is effected, file the return of
21  service for Defendant, along with evidence of the attempt to secure a waiver of
22  service of the summons and of the costs subsequently incurred in effecting service
23  upon Defendant.  The costs of service must be enumerated on the return of service
24  form (USM-285) and must include the costs incurred by the Marshal for
25  photocopying additional copies of the Summons, Complaint, or this Order and for
26  preparing new process receipt and return forms (USM-285), if required.  Costs of
27  service will be taxed against the personally served Defendant pursuant to Rule

4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(14) Defendants Corizon, Centurion Health, and Profiri must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(15) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(16) This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 17th day of October, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge